Case 12-17199    Filed 04/29/14    Doc 128

POSTED ON WEBSITE

FILED
APR 29 2014
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re ) Case No. 12-17199-B-7
)
Gursev Kaur, ) DC No. CRS-3
)
       Debtor. )

**MEMORANDUM DECISION REGARDING
DEBTOR'S MOTION TO DISMISS**

Cynthia R. Scully, Esq., of the Law Offices of Cynthia R. Scully appeared on behalf of the debtor Gursev Kaur.

Michael J. Gomez, Esq., of Lang, Richert & Patch appeared on behalf of the chapter 7 trustee Jeffrey M. Vetter.

      Before the court is a motion filed by the debtor Gursev Kaur (the "Debtor") to dismiss her chapter 7 case under 11 U.S.C. § 707(a)[1] (the "Motion"). The Debtor contends that there is cause to dismiss the case because all of the unsecured claims have been either paid outside of the bankruptcy case or settled and withdrawn. The trustee Jeffrey Vetter (the "Trustee") objects to the Motion on the grounds, *inter alia*, that the estate has incurred substantial administrative expenses which it cannot pay without the successful prosecution of a pending adversary proceeding.[2] For the reasons set forth below, the Debtor's Motion will be denied, and the case will remain

---

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated *after* October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) of 2005, Pub. L. No. 109-8, 119 Stat. 23.

[2] The Trustee also challenges the Debtor's contention that the general unsecured claims have all been satisfied. For purposes of this ruling, the court does not need to decide that issue and will assume that there are no remaining unsecured claims to be paid by the Trustee.

active, provided the case may hereafter be dismissed at any time, without a further hearing, upon a showing that the Debtor and the Trustee have reached an agreement to provide for payment of the reasonable and necessary chapter 7 administrative expenses.[3]

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c). The court has jurisdiction over this matter under 28 U.S.C. § 1334, 11 U.S.C. § 707, and General Order Nos. 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

**Background and Findings of Fact.**

Prior to commencement of this bankruptcy, the Debtor owned and operated a restaurant in Buttonwillow, California, called Taste of India (the "Restaurant"). In June 2012, two of the Restaurant's former employees filed claims against the Debtor with the California Labor Commissioner seeking $30,400 in unpaid overtime wages (the "Wage Claims"). On July 10, 2012, the Labor Commissioner issued notices setting an initial conference for both of the Wage Claims to be held at the Labor Commissioner's office on July 24. After the conference, on July 31, the Labor Commissioner issued notices setting both Wage Claims for an evidentiary hearing on August 22, 2012. The Debtor filed her chapter 7 petition on August 21, one day

---

[3] The primary administrative expense is the bill for attorney's fees and costs which the estate has incurred in prosecution of the Trustee's adversary proceeding against the Debtor's daughter. The court has not yet made any award of attorney's fees or approved payment of any administrative expense. Unless the Debtor and the Trustee can reach an agreement regarding dismissal of the case, the court will ultimately determine the amount of "reasonable and necessary" attorney's fees in a noticed motion. It is not clear that attorney's fees incurred by the Trustee after the Debtor filed this Motion will be compensable, but that is not grounds to deny approval of appropriate fees already incurred.

before the scheduled hearings. With the bankruptcy filing, the Wage Claim proceedings were stayed.

With the petition, the Debtor also filed all of the schedules and the statement of financial affairs (the "SOFA") required by the Bankruptcy Code and Rules. The Debtor's schedules report that she resides in a house located on Prosperity Rose Avenue in Bakersfield, California (the "Residence"). The Debtor's schedules also show that she had no nonexempt assets to liquidate for the benefit of creditors. On the SOFA, the Debtor disclosed that the Residence had been transferred as a "gift" to the Debtor's daughter Jasvir Kaur ("Jasvir") on July 24, 2012, the same day as the initial conference before the Labor Commissioner.[4] The Residence was valued in the SOFA at $229,000, and based on Schedule D, it was unencumbered. The Debtor's SOFA explains the "gift" to Jasvir as follows: "Debtor gifted the real property to Debtor's Daughter as a dowry in accordance with Indian and religious custom." Debtor's SOFA, at 3, Aug. 21, 2012, ECF No. 1.

Presumably, the Trustee questioned the Debtor at the initial meeting of creditors about the Residence and the transfer to Jasvir. After that meeting, the court authorized the Trustee to employ the law firm Lang, Richert & Patch ("LRP") as general counsel for the estate. After the continued meeting of creditors, on November 8, 2012, the Trustee instructed the clerk of court to issue a notice to creditors to file proofs of claim based on his contention that assets (presumably the Residence) were potentially available for distribution. Ultimately, five creditors, including the two Wage Claim employees, filed five proofs of claim, asserting a total of approximately $42,000 in unsecured claims against the Debtor.[5] The Debtor's

---

[4] The schedules also show that Jasvir paid $3,500 to the Debtor's bankruptcy counsel to file the petition for her mother. Schedule B reveals that all of the Debtor's household goods and wearing apparel were still located at the Residence.

[5] The Wage Claim creditors filed proofs of claim totaling $36,808 which was substantially more than they requested in the complaint filed with the Labor Commissioner.

discharge was entered, without objection, on January 7, 2013.

On November 15, 2012, the Trustee filed an adversary proceeding against Jasvir to avoid the "gift" as a fraudulent transfer and recover the Residence for the benefit of the estate (Adv. No. 12-1188, the "Adversary Proceeding"). If successful, the value of the Residence would have been sufficient to pay all of the unsecured claims in full, plus all of the administrative expenses, and still return a substantial amount of surplus funds to the Debtor. Although the Debtor is not a named defendant in the Adversary Proceeding, she appeared through counsel at status conferences and strongly voiced her opposition to the Trustee's efforts to recover the Residence from her daughter.[6]

In response to the Trustee's Adversary Proceeding, the Debtor embarked upon a plan to eliminate all of the unsecured claims. On September 30, 2013, she filed objections to both of the Wage Claims. Jasvir had argued in defense of the Adversary Proceeding that the Wage Claims were invalid. Without the Wage Claims, it appears that the Debtor may not have been insolvent at the time she transferred the Residence. The claim objections were originally filed to be tried in conjunction with the Adversary Proceeding. However, the Debtor subsequently settled the Wage Claims outside of the bankruptcy, on terms that were not disclosed, and on January 23, 2014,

---

[6] The record shows that Debtor's counsel, Cynthia Scully, Esq., appeared at a status conference in the Adversary Proceeding on August 29, 2013. On September 3, 2013, Ms. Scully tried to file a Notice of Substitution of Counsel to represent the Debtor in the Adversary Proceeding (which the court denied on procedural grounds). Ms. Scully appeared again with Jasvir's counsel at the final pre-trial conference on January 10, 2014. Together, they announced for the first time that the Wage Claims had been settled and that the Debtor was in the process of paying the remaining unsecured claims. Ms. Scully appeared at a rescheduled status conference on February 6, 2014, and informed the court that she was going to file this Motion seeking a dismissal of the main case. Ms. Scully appeared again at a continued status conference on April 3, 2014, at which time the parties argued the Motion and the status conference was dropped from calendar pending a ruling on the dismissal issue.

the Wage Claim creditors requested that their claims be withdrawn.[7]

The Debtor filed this Motion to dismiss the entire chapter 7 case on February 12, 2014. The Motion was first set for hearing on March 6 but was continued for lack of admissible evidence regarding the Debtor's payment of the three remaining unsecured claims, which totaled less than $5,000. On March 26, the Debtor offered additional evidence in support of her contention that those claims had also been paid, again, outside of the bankruptcy.[8] The Motion was argued on April 3. The parties were given an opportunity to file supplemental briefs and the matter was taken under submission.

## Issue Presented.

After months of litigation over the "gift" to Jasvir, the Debtor now asks that the case be dismissed because she made arrangements to resolve all of the unsecured claims outside of the bankruptcy case. It is no secret that the Debtor is really trying to stop the Adversary Proceeding and prevent the Trustee from recovering the Residence from Jasvir. The Trustee objects to dismissal because it would be prejudicial to administrative claimants (i.e., the Trustee and LRP) who will remain unpaid for the work they have done if the Residence is not recovered and liquidated. Again, it is no secret that the Trustee would not oppose dismissal of both the bankruptcy case and the Adversary Proceeding if there was some provision, other than liquidating the Residence, for payment of the accrued administrative expenses. The issue here is whether "cause" exists for dismissal of the chapter 7 case under § 707(a) when the estate's only remaining obligation is the unpaid administrative expenses that can yet

---

[7] Although the court granted the two creditors' motions to withdraw the Wage Claims, there are no corresponding orders on the docket to effectuate the withdrawals as required by Bankruptcy Rule 3006.

[8] One of the three creditors filed a notice of withdrawal of its claim pursuant to Bankruptcy Rule 3006. However, neither the Debtor nor the Trustee has filed claim objections to disallow the other two claims, and neither of the two remaining creditors has yet filed a notice of withdrawal.

5

be satisfied from potentially recoverable assets.

**Discussion and Conclusions of Law.**

      Dismissal for Cause under § 707(a). Dismissal of a chapter 7 case is governed by § 707 of the Bankruptcy Code, which provides, in relevant part, that the bankruptcy court "may dismiss [the case] only after notice and a hearing and *only for cause*."[9] § 707(a) (emphasis added). The determination of "cause" under § 707(a) will typically depend on the totality of the circumstances. *See Sherman v. SEC (In re Sherman)*, 491 F.3d 948, 970 (9th Cir. 2007) (setting forth the two-step analysis for determining "cause" under § 707(a)); *Hickman v. Hana (In re Hickman)*, 384 B.R. 832, 840 (9th Cir. BAP 2008).

      The debtor may have the right to voluntarily dismiss her chapter 7 case under § 707(a), but that right is not absolute. *Bartee v. Ainsworth (In re Bartee)*, 317 B.R. 362, 366 (9th Cir. BAP 2004). Instead, the "debtor must [still] establish cause to obtain dismissal." *Id.* On this issue of cause, "[t]he law in the Ninth Circuit is clear: a voluntary Chapter 7 debtor is entitled to dismissal of his [or her] case so long as

---

[9] In its entirety, § 707(a) provides,

(a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees or charges required under chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

The Debtor does not contend that any of the three enumerated grounds for "cause" under § 707(a) is applicable here.

such dismissal will cause no 'legal prejudice' to interested parties." *Leach v. United States (In re Leach)*, 130 B.R. 855, 857 (9th Cir. BAP 1991) (citing *Schroeder v. Int'l Airport Inn P'ship (In re Int'l Airport Inn P'ship)*, 517 F.2d 510, 512 (9th Cir. 1975) (per curiam) (Bankruptcy Act case); *Gill v. Hall (In re Hall)*, 15 B.R. 913, 917 (9th Cir. BAP 1981)). Legal prejudice means "prejudice to some legal interest, some legal claim, some legal argument," *Westlands Water Dist. v. United States*, 100 F.3d 94, 97 (9th Cir. 1996), but the issue of prejudice "may be evaluated using both legal and equitable considerations," *Hickman*, 384 B.R. at 840.

The Debtor, as the moving party, bears the burden of showing "that there would be no legal prejudice resulting from the dismissal." *Id.* at 841. Ultimately, the decision to dismiss a chapter 7 case for cause rests within the sound discretion of the bankruptcy court. *Id.* at 840.

<u>Prejudice to Administrative Claimants and the Estate.</u> Here, the Debtor argues that dismissal would cause no prejudice because all filed claims have been provided for outside of the bankruptcy and/or withdrawn. Since the Trustee no longer has any general unsecured claims to pay with estate assets, the Debtor contends that dismissal of her case is now appropriate.

While the Debtor's argument may apply to those who initially filed general unsecured claims, the inquiry under § 707(a) requires the court to consider the prejudice to *all* parties in interest, not just one creditor constituency. *See Leach*, 130 B.R. at 857; *Schwartz v. Geltzer (In re Smith)*, 507 F.3d 64, 72 (2d Cir. 2007). In this case, the pool of interested parties includes administrative claimants, who, unlike the other unsecured (lower-priority) creditors, have not been paid. *Cf. Hall*, 15 B.R. at 915 (providing that trustee "has standing to object [to debtor's motion to dismiss] on the grounds that his fees, costs or expenses must be paid before the case may be dismissed"). The pool of interested parties must also include the estate itself. *See Stalnaker v. DLC, Ltd.*, 376 F.3d 819, 823–24 (8th Cir. 2004). Here, the Debtor cannot show that administrative claimants and the estate would not be prejudiced by

7

an outright dismissal of her case.

Indeed, the administrative claimants would clearly suffer prejudice by a dismissal of the Debtor's case since dismissal will necessarily terminate their ability to get paid for rendering services to the estate. The Debtor argues that since there are currently no nonexempt estate assets from which to pay administrative expenses, those claimants would get paid nothing whether or not the case gets dismissed. With regard to the Trustee's pending Adversary Proceeding against Jasvir, the Debtor argues that the Residence has not yet been recovered and liquidated and therefore cannot be used to pay administrative expenses at this time. However, simply because the Trustee has not yet recovered the Residence does not mean that the Trustee will never recover the Residence.[10] It still remains a possible source of payment. If dismissal is ordered now, that necessarily puts an end to the Trustee's Adversary Proceeding and to any opportunity he may have to pay the administrative expenses. *See In re Hopper*, 404 B.R. 302, 307 (Bankr. N.D. Ill. 2009) ("Legal prejudice is found to exist where assets which would otherwise be available to creditors are lost because of the dismissal."). Therefore, the Trustee and LRP, as administrative claimants, would suffer prejudice from a dismissal, especially when their outstanding fees are the result of reasonable and diligent efforts to administer the estate.

On a similar note, the bankruptcy court must also consider the potential for prejudice to the bankruptcy estate itself. As one court has stated, "[T]he bankruptcy 'estate' is not synonymous with the concept of a pool of assets to be gathered for the sole benefit of unsecured creditors." *Stalnaker*, 376 F.3d at 823. And "[t]he fact that [all] unsecured creditors settle [with a debtor] on the eve of trial [on a trustee's avoidance action] does not extinguish the bankruptcy estate as a legal entity . . . ." *Id.*

---

[10] It is appropriate to affirm here that Jasvir may yet have a meritorious defense to the Adversary Proceeding, in which case the estate will be administratively insolvent. In that event, the administrative claimants will have no further remedy, and dismissal might be an appropriate step if the Trustee does not expeditiously close the case.

at 824.

Once the Debtor filed bankruptcy and the bankruptcy estate was created, the Trustee was appointed to perform various tasks on behalf of the estate, including "collect[ing] and reduc[ing] to money the property of the estate for which such trustee serves, and clos[ing] such estate as expeditiously as is compatible with the best interests of parties in interest." § 704(a)(1). There is no question that the Trustee in this case, along with his counsel LRP, properly carried out this duty by initiating the Adversary Proceeding very soon after the meeting of creditors.

Yet, allowing the Debtor to dismiss her case outright at this time effectively punishes the Trustee for diligently performing his statutory duties and acting in the best interests of the estate. Until the case is closed, the estate still exists, even after all prepetition unsecured claims have been paid. So long as nonexempt assets are available, the estate has not been fully administered until its administrative obligations have also been paid. Under these circumstances, dismissal before the estate can be fully administered would do violence to the bankruptcy process, creating a disincentive for trustees to work expeditiously in augmenting the estate so that creditors can receive the maximum recovery on their claims. Thus, the estate would also be prejudiced by an early dismissal of this case.

<u>Benefit to Only Administrative Claimants.</u> The Debtor next contends that the Trustee and LRP should not be permitted to continue litigating the Adversary Proceeding when they will be the only parties to benefit from any recovery. In essence, the Debtor's argument is that dismissal is appropriate now because even if the Trustee and LRP's fees can be paid from an estate asset, those fees, incurred for only their benefit, do not represent actual and necessary services entitled to allowance under § 330.

On this issue, the court appreciates the policy in the Ninth Circuit of disallowing the fees of a trustee and his or her professionals when their administrative efforts will only benefit themselves. *See Estes & Hoyt v. Crake (In re Riverside-*

9

*Linden Inv. Co.)*, 925 F.2d 320, 322 (9th Cir. 1991) (per curiam) (finding no abuse of discretion in bankruptcy court's denial of attorney's fees "[w]hen a cost benefit analysis indicates that the only parties who will likely benefit from an investigation of a claim are the trustee and his professionals" (alteration in original) (internal quotation marks omitted)); *Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re Mednet)*, 251 B.R. 103, 108–09 (9th Cir. BAP 2000). However, that policy requires an assessment of the circumstances existing at the time that the trustee and his or her professionals incurred their fees. *See Mednet*, 251 B.R. at 108 (stating that "the applicant must demonstrate only that the services were 'reasonably likely' to benefit the estate at the time the services were rendered").

Here, at the time of LRP's employment and commencement of the Adversary Proceeding, it was clear that LRP's legal services were both necessary and potentially beneficial to the estate. The fact that the Trustee's actions ultimately forced the Debtor to settle and pay her unsecured creditors in full (which she could have done without filing bankruptcy at all) further supports a finding that LRP's services were beneficial to the estate. For more than a year after filing the Adversary Proceeding, the Trustee performed his statutory duty under the belief that he needed to recover the Residence for the benefit of the five unsecured creditors who had filed claims. The Debtor never informed the Trustee until late in the case that she intended to settle all unsecured claims on her own and that he, as a result, would no longer need to prosecute the Adversary Proceeding. Thus, the services rendered so far by the Trustee and LRP cannot be summarily rejected as only benefitting themselves.

<u>No Prejudice to the Debtor.</u> Finally, the Debtor overstates how adversely affected she will be if her chapter 7 case and the Trustee's Adversary Proceeding are permitted to continue. She argues that her Motion "should be granted in order to facilitate her 'fresh start.'" Debtor's Mem. P. & A. 4:25–26, Feb. 12, 2014, ECF No. 103. However, the Debtor has already received her discharge, and nobody has objected to her exemptions. Therefore, it is unclear what the Debtor believes is now

interfering with her fresh start.

Essentially only the Adversary Proceeding stands in the way of concluding this case, but that does not directly impact the Debtor's fresh start. The Debtor suffers no prejudice with the continuation of the Adversary Proceeding because she is not a defendant in the action and the Residence is not even her property—she gave it to Jasvir.[11] If the Trustee does not prevail in the Adversary Proceeding, then only the Trustee and his professionals are adversely affected because there will be no funds from which to pay the administrative expenses. Conversely, if the Trustee succeeds and the Residence is recovered and liquidated, the Debtor will actually benefit, given that any proceeds remaining after payment of the allowed administrative expenses will be returned to her. *See* § 726(a)(6). The party that is most adversely affected by the continuation of the bankruptcy case and the Adversary Proceeding is Jasvir, so the Debtor's desire to have her case dismissed now suggests that the Debtor is actually acting in the interest of Jasvir. However, the interests of a transferee of an alleged fraudulent transfer should not be considered in deciding whether to dismiss a case under § 707(a).

For these reasons, the Debtor has not met her burden to establish that immediate dismissal of her case would not prejudice the estate and all interested parties, particularly administrative claimants. Therefore, she has not established cause under § 707(a) to dismiss the case before the Adversary Proceeding is completed and the administrative expenses are paid, if possible.

<u>Dismissal Conditioned on Payment of Administrative Expenses.</u> Although an outright dismissal of the chapter 7 case would be inappropriate, the court can conditionally grant the Debtor's Motion while also sustaining the Trustee's objection to the Motion. Under similar circumstances, some bankruptcy courts have dismissed

---

[11] The Debtor may be called as a witness in the Adversary Proceeding, but being a witness can hardly amount to prejudice.

chapter 7 cases conditioned on the debtor paying the outstanding administrative expenses. *See, e.g., In re Aupperle*, 352 B.R. 43, 48 (Bankr. D.N.J. 2005); *In re Jackson*, 7 B.R. 616, 617–18 (Bankr. E.D. Tenn. 1980); *In re Gallman*, 6 B.R. 1, 2 (Bankr. N.D. Ga. 1980). The court agrees with the approach taken by those courts. The Debtor essentially created the problem which she now seeks to avoid. She could have settled the Wage Claims and paid the other few unsecured claims without ever seeking bankruptcy protection. At a minimum, she could have taken care of the claims as soon as she learned that the Trustee intended to recover the Residence. Instead, she waited until the Trustee and LRP had prepared the Adversary Proceeding for trial. The Trustee and LRP acted properly in prosecuting the Adversary Proceeding and otherwise administering the estate, and they should not now be compelled to absorb the unpaid cost of that administration. If the Debtor sincerely desires to see this case dismissed and preserve Jasvir's peaceful possession of the Residence, then the Debtor should pay the reasonable and necessary administrative expenses that could have been avoided, but which have now been incurred.

**Conclusion.**

Based on the foregoing, the court finds and concludes that dismissal under § 707(a) is not appropriate, and the Motion will be denied. However, the court appreciates that the ultimate goal is to achieve some finality with regard to the proceedings in this court and to end the accrual of legal fees, on both sides, without unduly burdening the Trustee and his professionals who have worked to administer the estate. Therefore, the case may hereafter be dismissed at any time, without a further hearing, upon a showing that the Debtor and the Trustee have reached an

///
///
///
///
///

agreement to provide for payment of the reasonable and necessary chapter 7 administrative expenses.  In that event, the terms of such agreement need only be disclosed to and approved by the United States Trustee and need not be approved by this court.  The court will issue a separate order.

Dated: April __29__, 2014

_W. Richard Lee (signature)_
W. Richard Lee
United States Bankruptcy Judge

**Instructions to Clerk of Court**
Service List - Not Part of Order/Judgment

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked ____, via the U.S. mail.

Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and __X__ Other Persons Specified Below:

Michael J. Gomez, Esq.
Attorney at Law
P.O. Box 40012
Fresno, CA 93755-0012

René Lastreto II, Esq.
Attorney at Law
P.O. Box 40012
Fresno, CA 93755-0012

D. Max Gardner, Esq.
Attorney at Law
1800 30th Street, 4th Floor
Bakersfield, CA 93301-5298

Office of the U.S. Trustee
U.S. Courthouse
2500 Tulare Street, Suite 1401
Fresno, CA 93721